ABILENE LIGHT & WATER COMPANY v. W. M. ROBINSON.

Decided June 25, 1910.

**1.—Personal Injuries—Lineman—Negligence—Issue of Fact.**

In a suit by a lineman against a water and light company for damages for personal injuries caused by the breaking of a pole on which plaintiff was at work, evidence considered and held to raise an issue of fact as to whose duty it was to inspect the pole before erecting it, and, consequently, the issues of negligence, contributory negligence and assumed risk, which were properly submitted to the jury.

**2.—Charge—Damages—Double Recovery.**

In a suit for damages for personal injuries the court charged the jury that in the event they found in plaintiff's favor they should assess his damages "at such a sum as in your judgment would reasonably compensate plaintiff for the injuries, if any, he has received, and in estimating such damages you may consider the mental and physical suffering of plaintiff, if any, or loss of the use of his hand and fingers, if any such loss he has incurred, and the permanent diminution of his ability to work and earn money, if there has been any such diminution." Held, subject to the objection that it allowed a double recovery for the same loss.

**3.—Master and Servant—"Appliances"—Definition.**

A lineman having been injured by the breaking of a pole furnished by his employer and on which he was engaged in stringing wires, in a suit for damages the court charged the jury as follows: "You are charged that when an employee enters the employment of the employer, he has the right to rely on the assumption that the machinery, tools and appliances with which he is called on to work are reasonably safe." Held, the term "appliances" was not improperly used as descriptive of the poles which the defendant furnished and plaintiff was required to use in the performance of his duties.

Appeal from the District Court of Taylor County. Tried below before Hon. T. L. Blanton.

*J. M. Wagstaff,* for appellant.

*Cunningham & Sewell,* for appellee.

DUNKLIN, ASSOCIATE JUSTICE.—The Abilene Light & Water Company has appealed from a judgment in favor of W. M. Robinson for fifteen hundred dollars recovered as damages for injuries sustained by Robinson as the result of a fall from a pole while he was placing thereon wires for electric lights.

Plaintiff was in the employment of defendant as lineman and on the occasion of the accident in controversy was engaged in the construction of a new line of electric light wires. He had full charge of the work of constructing it and was assisted in the work by D. F. Kendall,

his co-employee. He selected seventeen poles from a number in defendant's warehouse; hauled them out to the place where they were to be used and, after erecting them and stringing wires thereon, found that three more poles would be required to complete the proposed line. He telephoned to defendant's manager requesting him to send the three additional poles required, which the manager sent to him. When plaintiff received the additional poles he erected them and climbed upon one of them for the purpose of stringing a wire thereon. While thus engaged, the pole broke, causing him to fall to the ground, and by reason of the fall his arm was broken. Plaintiff alleged in his petition that the pole which broke with him was unsound, that it broke by reason of its defective condition, and that defendant was guilty of negligence in selecting and furnishing it to be used by him in the work. The alleged negligence of defendant in the particular just mentioned was the only issue of negligence submitted in the court's charge to the jury as a basis for a recovery by the plaintiff.

The evidence showed that the pole which broke was about twenty feet long, four inches square, and that it was set in the ground at a depth of approximately eighteen inches. Plaintiff climbed the pole by using spurs attached to his feet and was at the top when the pole broke with him. His assistant, D F. Kendall, testified: "I noticed the particular pole upon which he (Robinson) was working when he fell. I did not consider the pole unsound, but it was what I would call a light, spongy pine, soft spongy pine. I carried the pole down there some seventy-five or one hundred yards. I put the cross arm on it and carried it down there. I told Robinson it was a very light pole; I had hardly ever lifted one of that size. It was sappy pine. . . . I suppose the pole broke about two-thirds of the way up the length of the pole. I did not notice particularly, but it broke just below his feet. There was a kind of surly place where it broke. You could see it plainly."

Plaintiff testified in part as follows: "My duties in the discharge of my employment was that of a lineman. The duties of a lineman are to climb the poles and putting wires on them and connecting up transferrers and such as that. George Lowry and myself were the only two linemen working for the Abilene Light & Water Company at the time. We were the only two for a good while. It only required two men to keep up and extend the line of the Abilene Light & Water Company with now and then a helper, and when I speak of my duties as a lineman my duties comprehend the stretching of the wire and the erecting of the poles and of keeping the line in repair. Those were the only men who were employed by the Abilene Light & Water Company to do that business. When I erected that line I intended to make a good line out of it. I had full charge of the erection of that line, of putting in the poles and of putting in a good line. If there had been any bad or defective poles I would not have put them in there. The company is supposed to send me good poles to climb. I don't know as any one told me so. I did not get that from my lawyers. It was my business and my duty to erect that

line out there and I had full charge of it. I had a helper there with me. It was my business if there was any broken poles, to throw them out. I would not put up a broken pole. The other poles we put up had knots in them. I knew that. I climbed 17 of them. I knew that they were knotty poles but I didn't pay any attention to broken poles or anything like that. I did not particularly notice this pole when I climbed up on it. I did not know that the pole was unsound at the time I got on it. I had no reason to believe that these poles that I was erecting and climbing out here were not safe."

W. G. Swenson, defendant's president and general manager, as a witness for defendant, testified: "The duties of our linemen were to watch the line and if they found anything broken or out of order to repair or fix it, and when new lines were being built to tie on jobs of work. . . . In the construction of the work, the linemen pick out the poles and see that they are such poles as should be set, and so on. The poles are down at the plant and they go and pick out the poles and have them hauled to the place where they are used. . . . The linemen are not supposed to set up rotten or bad poles. It is his business to inspect them and see that they are in good shape."

The principal contentions presented by several assignments are, substantially, first, that there was no evidence to support the allegation of negligence on the part of defendant in sending to plaintiff the pole which broke and caused him to fall; second, that the evidence conclusively shows that the injury sustained by plaintiff was a risk which he assumed. If by the terms of his employment it was made plaintiff's duty to inspect all poles to be erected by him to determine whether or not they were suitable for use before he erected them, and to reject those found by him unfit, then appellant is correct in its first contention. While the testimony of Mr. Swenson quoted would show that such was one of the plaintiff's duties, yet that testimony, to some extent at least, was controverted by the testimony of plaintiff above set out. If it was not the duty of plaintiff to inspect the poles which were sent to him by defendant's general manager, to determine whether or not they were suitable for the use intended, then it was the duty of the latter to exercise ordinary care to select poles reasonably safe for such use as defendant ought reasonably to have anticipated plaintiff would make of them. If it was the duty of defendant to exercise ordinary care to select and send to plaintiff poles free of such defects as existed in the one which caused it to break, and if defendant failed to discharge that duty and such failure was the proximate cause of plaintiff's injury, then plaintiff did not assume the risk of injury to himself by climbing the pole which broke with him, unless he knew that the pole was defective, or in the ordinary discharge of his own duty must necessarily have acquired that knowledge. Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347. Nor do we think that the evidence conclusively shows that plaintiff was himself guilty of negligence proximately contributing to his injury in climbing the defective pole instead of ascending it by using a ladder.

Appellant insists further that the evidence conclusively shows that plaintiff was guilty of negligence proximately contributing to his injury in failing to discover the defect in the pole at the time he erected it. If it was one of plaintiff's duties under the terms of his employment to inspect all poles he should erect, and to determine whether or not they were suitable for use, then he assumed the risk of his injury and it would be proper to so instruct the jury, irrespective of the question whether or not he was guilty of contributory negligence in failing to discover that the pole in question was defective. If such was not one of the duties of his employment and if defendant was guilty of negligence in causing the defective pole to be sent to him for use, then defendant could not be heard to say that plaintiff was guilty of negligence in failing to inspect the pole for defects, for under such circumstances plaintiff would have the right to assume and to rely upon the assumption that defendant had exercised ordinary care to select and send poles reasonably safe for the uses intended, and plaintiff would be under no legal duty to institute an investigation to determine whether or not defendant had performed that duty. Missouri, K. & T. Ry. Co. v. Hannig, *supra.*

The court charged the jury that in the event of a verdict in plaintiff's favor they should assess his damages "at such a sum as in your judgment would reasonably compensate plaintiff for the injuries, if any, he has received, and in estimating such damages you may consider the mental and physical suffering of plaintiff, if any, or loss of the use of his hand and fingers, if any such loss he has incurred, and the permanent diminution of his ability to work and earn money, if there has been any such diminution." Appellant challenges the correctness of this charge upon the ground that it authorized the recovery of double damages. We think this assignment should be sustained. The only injury complained of by plaintiff as the result of his fall, in addition to physical pain and mental anguish, was a broken arm resulting in a weakening of that member, and a loss of the use of his fingers and hand from stiffness in the joints. If the jury should allow him full damages for the "loss of the use of his hand and fingers," necessarily, they would include in the sum so allowed damages for any "permanent diminution of his ability to work and earn money"; and yet, by the instruction, the court treats those losses as separate and distinct and, in effect, tells the jury they may allow for each. We can not say that the jury were not thereby misled to allow double damages for the same loss. It is reasonable to suppose that in assessing plaintiff's damages, the jury, who were sworn to be governed by the law as given in the charge, did treat "the loss of the use of his hand and fingers" and "the permanent diminution of his ability to work and earn money" as two separate losses and that they allowed damages accordingly. International & G. N. Ry. v. Butcher, 98 Texas, 462; Stamford Oil Mill Co. v. Barnes, 55 Texas Civ. App., 420 (119 S. W., 873), and other authorities therein cited.

Another paragraph of the court's charge reads: "You are charged that when an employee enters the employment of the employer, he has

the right to rely on the assumption that the machinery, tools and appliances with which he is called upon to work are reasonably safe." Error is assigned to this instruction upon the ground that there was no evidence upon which to base it. It is true that there was no evidence of unsafe machinery or tools and those terms should have been omitted in defining the duty defendant owed to plaintiff, but we think the term "appliances" is sufficiently comprehensive to include the poles which defendant's general manager sent out to plaintiff upon the occasion in controversy. Indeed, in the statement of the common law rule announced in the instruction quoted, the term "instrumentalities" is sometimes used instead of "appliances." 26 Cyc., 1097-1108. Besides, the general rule is that when the master undertakes to furnish material of any kind to be used by the servant as a means for the performance of his work, he owes the duty to exercise ordinary care to select proper and suitable material. 26 Cyc., 1115; Dresser's Employees' Liability, page 529. We can not agree with appellant in his contention that there was no evidence to warrant the instruction last quoted. But in view of another trial we suggest that the instruction should not have been given without some limitation in addition to the one already suggested, because it was a disputed issue whether it was one of the duties of plaintiff under the terms of his employment to inspect all poles erected by him before he erected them, for the purpose of determining their suitability for such use, and in no event would an instruction of the character now under discussion be proper unless the testimony showed without controversy that such was not his duty.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*